UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DEWITT WEBSTER,**

        **Plaintiff,**

        v.                                         Case No. 08-C-481

**MILWAUKEE COUNTY,**

        **Defendant.**

## DECISION AND ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### I. PROCEDURAL AND FACTUAL HISTORY

Dewitt Webster ("Webster") was terminated from his position with Milwaukee County as a Highway Maintenance Worker I on September 26, 2006. (Docket No. 22 at 2.) This termination was the culmination of a lengthy progressive discipline against Webster for what the Milwaukee County Personnel Review Board ("PRB") determined were his repeated failures to comply with the County's attendance policy. The first relevant instance occurred on June 30, 2005, for which Webster was counseled. (Docket No. 26-39 at 14.) Webster received a warning for a second allegedly unauthorized absence occurring on July 7, 2005. (Docket No. 26-39 at 15.) A third allegedly unauthorized absence on October 26, 2005 resulted in Webster being issued a written reprimand. (Docket No. 26-39 at 15-16.) When Webster again was absent allegedly without authorization on December 29, 2005, he was suspended for one day. (Docket No. 26-39 at 16.) A three-day suspension resulted from Webster's fifth alleged unauthorized absence on February 22, 2006. (Docket No. 26-39 at 16.) Webster's allegedly unauthorized absence on March 29, 2006

resulted in a five-day suspension, (Docket No. 26-39 at 16-17), and a ten-day suspension resulted from Webster's seventh allegedly unauthorized absence on April 3, 2006, (Docket No. 26-39 at 17). Finally, on April 5, 2006, when Webster was again allegedly absent without proper authorization for the eighth time, Webster was suspended pending termination. (Docket No. 26-39 at 17-18.) Webster challenged his termination with the PRB and he appeared at a PRB hearing with two attorneys. (Docket No. 22 at 4.) Following the presentation of evidence, which included the testimony and cross-examination of witnesses, the PRB issued written findings of fact and conclusions of law sustaining Webster's termination, (Docket No. 25-1, 25-2.)

However, what is crucial to this dispute and is the reason why this federal lawsuit was commenced is the fact that, prior to each of these alleged absences, Webster had requested intermittent leave under the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq.*, in order to care for his seriously ill daughter. (Docket No. 1.) On January 16, 2005, Webster submitted a request for intermittent FMLA leave between February 16, 2005 and December 31, 2005, which Webster alleges was approved by the county. (Docket No. 22 at 2.) On January 30, 2006, Webster again submitted a request for intermittent FMLA leave between February 1, 2006 and December 31, 2006, which he again alleges was approved by the county. (Docket No. 22 at 2.)

Both parties have moved for summary judgment. (Docket Nos. 23, 26.) The pleadings on these motions are closed and the matters are ready for resolution.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome

of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. MILWAUKEE COUNTY'S MOTION FOR SUMMARY JUDGMENT

Milwaukee County contends that summary judgment in its favor is appropriate because all of Webster's claims are barred by the doctrine of issue preclusion. Specifically, Milwaukee County contends that the propriety of Webster's termination was already adjudicated by the quasi-judicial PRB, and Webster is simply seeking to re-litigate that issue in this court. (Docket No. 24 at 11.)

The preclusion doctrines have confused generations of law students and attorneys, and often perplexed the courts. Contributing to much of the confusion surrounding these doctrines is that "varying and, at times, seemingly conflicting terminology" has frequently been used in discussing these doctrines. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 77 n.1 (1984).

3

Generally speaking, there are two separate doctrines which control the preclusive effect a former adjudication should receive: issue preclusion and claim preclusion. Both of these doctrines fall under the broad heading of res judicata, Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 77 (1984), although there are many instances where the term res judicata has been utilized to refer to only claim preclusion, see, e.g., McDonald v. West Branch, 466 U.S. 284, 287 (1984). Similarly, issue preclusion has often gone by the alternative name of collateral estoppel. The Wisconsin Supreme Court, following the lead of the Restatement (Second) of Judgments, has adopted the phrases issue preclusion and claim preclusion as the preferred terms to replace the antiquated phrases collateral estoppel and res judicata (when used to refer only to claim preclusion). See Kruckenberg v. Harvey, 2005 WI 43, ¶18 n. 11, 279 Wis. 2d 520; 694 N.W.2d 879 (citing Sopha v. Owens-Corning Fiberglas Corp., 230 Wis. 2d 212, 232, 601 N.W.2d 627, 636 (1999) in turn citing Northern States Power Co. v. Bugher, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995)).

> Issue preclusion addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action. Northern States Power Co. v. Bugher, 189 Wis. 2d 541, 550-51, 525 N.W.2d 723 (1995). In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and be necessary to the judgment. Town of Delafield v. Winkelman, 2004 WI 17, P34, 269 Wis. 2d 109, 675 N.W.2d 470; Michelle T. v. Crozier, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). If the issue actually has been litigated and is necessary to the judgment, the circuit court must then conduct a fairness analysis to determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand. Paige K.B. [v. Steven G.B.], 226 Wis. 2d [210,] 220-21[, 594 N.W.2d 370, 375] [(1999)]. For this analysis, the circuit court considers any of the following factors that are relevant to its decision: (1) whether the party against whom preclusion is sought could have obtained review of the judgment; (2) whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law; (3) whether there are apt to be significant differences in the quality or extensiveness of the two proceedings such that relitigation of the issue is warranted; (4) whether the burden of persuasion has shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) whether matters of public policy or individual circumstances would render the application of issue preclusion fundamentally unfair, including whether the party against whom preclusion is sought had an inadequate opportunity or incentive to obtain a full and fair adjudication of the issue in the initial litigation. Michelle T., 173 Wis. 2d at 688-89 (citing Restatement (Second) of Judgments § 28

4

(1980)). Some of these factors are decided as questions of law, e.g., factors 1, 2 and 4. Paige K.B., 226 Wis. 2d at 223-24. Other factors require the circuit court to exercise its discretion, for example, factors 3 and 5. Id. at 225.

Mrozek v. Intra Fin. Corp., 2005 WI 73, ¶17, 281 Wis. 2d 448, 699 N.W.2d 54.

Thus, in order to conclude that issue preclusion bars the plaintiff's claim in the present action, the court must answer all of the following questions in the affirmative. First, under the FMLA, may prior administrative agency decisions ever bar subsequent litigation of an FMLA claim under the doctrine of issue preclusion? Second, was the issue actually litigated and necessary to the judgment? Third, is the application of issue preclusion fundamentally fair?

### A. Issue Preclusion and the FMLA

Whether prior administrative proceedings should be given preclusive effect in subsequent FMLA litigation is a question that has not been conclusively determined by any court that binds the decisions of this court. The parties primarily rely upon the Second Circuit case of Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706 (2d Cir. 2001). In that case, the court recognized that the doctrine of issue preclusion may bar a litigant from re-litigating an issue that was determined in a state administrative proceeding. Id. at 729.

Although certain federal laws such as Title VII expressly state the weight that should be afforded state agency decisions, see Univ. of Tenn. v. Elliott, 478 U.S. 788, 795 (1986), thus indicating that these decisions should not be afforded preclusive effect, the FMLA contains no such language. Kosakow, 274 F.3d at 728. When a federal law fails to explicitly state the weight that should be afforded a prior agency determination, courts may find that Congress implicitly intended to deny state agency decisions preclusive effect. Id. at 729. For example, in the context of claims under the Age Discrimination in Employment Act ("ADEA"), the Supreme Court held that Congress' requirement that complainants first complete proceedings under state law before turning to federal court implied that it did not intend those prior state proceedings to be given preclusive

effect in a subsequent federal case. Id. (citing Astoria Fed. Sav. & Loan v. Solimino, 501 U.S. 104 (1991)). On the other hand, in the context of claims brought under § 1983, the Supreme Court held that since Congress did not either implicitly or explicitly seek to limit the weight given to state administrative decisions, the decisions of a state administrative agency acting in a judicial capacity could be given preclusive effect. Id. at 728 (citing Elliott, 478 U.S. at 798-99).

The Second Circuit noted, "The FMLA contains no provision dealing with prior state administrative actions." Id. at 729. Additionally, unlike the ADEA, "there is no indication of a Congressional intent anywhere in the FMLA to limit the preclusive effect of state administrative agency factual determinations." Id. Thus, the court could not definitively say that Congress intended to limit the role that a state's administrative agencies findings would be afforded in a subsequent claim under the FMLA. Id. The Kosakow court then turned to state law to govern the application of issue preclusion.

The court has not identified any court that has disagreed with the Second Circuit and held that a prior administrative proceeding should never be afforded preclusive effect in a subsequent FMLA claim. Rather, courts that have addressed the question of the preclusive effect of a prior administrative decision in analogous contexts tend to skip the question of whether the FMLA imposes any limitation upon the use of prior decisions. See, e.g., Perry v. Am. Airlines, Inc., 405 F. Supp. 2d 700, 707 (E.D. Va. 2005) (rejecting claim and issue preclusion arguments because union member's FMLA claim could not have been arbitrated before the Adjustment Board and facts central to FMLA claim were not necessarily determined by the Adjustment Board); Dillaway v. Ferrante, 2003 U.S. Dist. LEXIS 23468 (D. Minn. Dec. 9, 2003) (refusing to give preclusive effect to an arbitrator's decision that the employer violated the FMLA because this decision was beyond the arbitrator's authority under the collective bargaining agreement); Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp. 2d 255, 262 (D.N.J. 2001) (rejecting issue preclusion defense because, in

6

part, the arbitrator's decision was limited to narrow contractual issues and was not judicially confirmed); Slaughter v. American Bldg. Maintenance Co., 64 F. Supp. 2d 319, 331 (S.D.N.Y. 1999) (rejecting issue preclusion defense because arbitrator's decision was limited to deciding issues under collective bargaining agreement; "an employer can certainly run afoul of the FMLA without also violating such an agreement"). Although some authority suggests that a decision of a state administrative authority should be afforded different weight than that of an arbitrator, see Johnson v. University of Wisconsin-Milwaukee, 783 F.2d 59 (7th Cir. 1986), the court finds this distinction insignificant for present purposes.

A court's decision to forego any discussion of the whether the FMLA imposes any limitations upon the application of prior administrative decision might not necessarily imply that the courts found no such limitation in light of the fact that in all the cases cited above the courts found other reasons why preclusion did not apply. However, in at least one case, Serafin v. Connecticut, 2005 U.S. Dist. LEXIS 3603, 26-27 (D. Conn. Mar. 9, 2005), a court concluded that an arbitrator's prior unfavorable decision under a collective bargaining agreement did bar the plaintiff's FMLA claim because, in the court's view, the plaintiff's choice to arbitrate her claim waived her right to bring a federal action. Id. at *32. Although citing Kosakow for a different point of law, the court did not address the question of whether Congress explicitly or implicitly stated in the FMLA that prior administrative decisions should not be given preclusive effect.

Therefore, based upon this court's review of the related case law, and specifically, the analysis set forth by the court in Kosakow, this court shares the approach taken by the Second Circuit and concludes that the factual determinations of state administrative agencies may be afforded preclusive effect in a subsequent claim under the FMLA. Thus, this court must look to Wisconsin's law regarding issue preclusion to determine whether the PRB's conclusion that Webster violated the county's attendance policy precludes him from bringing his present FMLA

7

claim. See Kosakow, 274 F.3d at 729 (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 381-82 (1985)).

### B. Application of Issue Preclusion

The PRB is authorized under state laws and county ordinances to adjudicate matters that relate to the discipline and discharge of county employees. State ex rel. Milwaukee County Pers. Review Bd. v. Clarke, 2006 WI App 186, ¶34, 296 Wis. 2d 210, 723 N.W.2d 141. Although the decision of the PRB is considered final, Wis. Stat. § 63.10(2), "[i]t is well established in this state that where there are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari." State ex rel. Iushewitz v. Milwaukee County Personnel Review Bd., 176 Wis. 2d 706, 710 (Wis. 1993) (quoting State ex rel. Johnson v. Cady, 50 Wis. 2d 540, 549-50, 185 N.W.2d 306 (1971) in turn citing State ex rel. Kaczkowski v. Fire & Police Comm, 33 Wis. 2d 488, 501, 148 N.W.2d 44 (1967)); see also Wis. Stat. § 68.13.

> Certiorari review of a decision of an administrative agency is limited to questions of law and addresses the following issues:
>
> (1) Whether the board kept within its jurisdiction;
>
> (2) Whether the board proceeded on a correct theory of the law;
>
> (3) Whether the board's action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and
>
> (4) Whether the evidence was such that it might reasonably make the order or determination in question.

Gentilli v. Bd. of the Police & Fire Comm'rs, 2004 WI 60, ¶19, 272 Wis. 2d 1, 680 N.W.2d 335.

In Wilhelm v. County of Milwaukee, 325 F.3d 843, 845 (7th Cir. 2003), the Seventh Circuit relied upon Hanlon v. Town of Milton, 2000 WI 61, 612 N.W.2d 44, 48, 235 Wis. 2d 597, to hold claim preclusion did not bar a former Milwaukee County employee's § 1983 claim simply because he did not raise his § 1983 claim in the certiorari proceeding circuit court following the PRB's refusal to hear his challenge to his termination. Quoting Hanlon, the court emphasized the limited

8

nature of a certiorari proceeding and the fact that a § 1983 action could not have been brought in a certiorari proceeding. Wilhelm, 325 F.3d at 846.

Relying upon these cases, the Honorable J.P. Stadtmueller held in Kearney v. Milwaukee County, 2006 U.S. Dist. LEXIS 79527 (E.D. Wis. Oct. 30, 2006), that issue preclusion likewise does not apply to PRB and subsequent certiorari proceedings. Id. at *17. In Kearney, Milwaukee County sought to bar a Milwaukee County Sheriff's Deputy's claims that he was terminated in violation of Title VII and § 1983 because the decision to terminate the plaintiff had already been upheld by the PRB, and the PRB's decision was upheld by the state circuit court upon certiorari review. Judge Stadtmueller alternatively held that the plaintiff's Title VII and § 1983 claims were not barred under the doctrine of issue preclusion because the plaintiff did not actually litigate these issues during the PRB or certiorari proceedings. Id. at *17.

Webster urges the court to adopt Judge Stadtmueller's conclusion in Kearney that issue preclusion will never apply to a decision of the PRB, (Docket No. 38 at 7-11), while the defendant contends that Kearney is distinguishable because it dealt with Title VII and § 1983 claims whereas the present action alleges violations of the FMLA, (Docket No. 52 at 9). Additionally, the defendant points out that contrary to Webster's erroneous references, (see Docket No. 38 at 9), Kearney is the decision of the district court and not a decision of the Seventh Circuit Court of Appeals, which would be binding upon this court. (Docket No. 52 at 10.)

The PRB repeatedly referred to the FMLA in its Findings of Fact, Conclusions of Law, and Order. (Docket No. 25-1, 25-2.) At certain times, it appears as if the PRB attempted to interpret the requirements of the FMLA, for example when discussing whether prior approval of an absence was required, (Docket No. 25-2 at 9), when FMLA leave must be granted, (Docket No. 25-2 at 10), and when a medical excuse is required, (Docket No. 25-2 at 9). The PRB also found that certain absences did not qualify as FMLA leave, (Docket No. 25-2 at 10), and rejected claims that

9

Webster's supervisors were disciplining him in retaliation for his exercise of his FMLA rights. (Docket No. 25-2 at 13.)

Despite these isolated passages, as the PRB's Conclusions of Law, (Docket No. 25-2 at 15-16), make clear, the PRB's task was very narrow. Each conclusion states that

> the Board concluded that the evidence was sufficient that DeWitt Webster violated Rule VII, Section 4(1) of the Civil Service Rules for Milwaukee County government, paragraphs, "(1) Refusing or failing to comply with department work rules, policies or procedures; (o) Unexcused, unauthorized or excessive absence; and (x) Interference with department work flow or department procedures."

(Docket No. 25-2 at 15-16.) The PRB never referred to the FMLA in its conclusions of law. Thus, the only issue before the PRB, and therefore the only issue the PRB decided, was whether Webster violated Milwaukee County's Civil Service Rules. The question before this court is whether Milwaukee County violated the FMLA, and this issue was not decided by the PRB.

Further, there is absolutely no indication that the PRB had any authority to adjudicate a FMLA claim of the nature Webster presents here. All indications are that the PRB's role was limited to resolving disputes related to alleged violations of the county's Civil Service Rules. Phrasing this issue differently, the PRB's conclusion that Webster violated the county's Civil Service Rules does not preclude a finding that Milwaukee County violated the FMLA; a finding that a worker violated workplace rules does not mean that those rules comported with the requirements of the FMLA. See Slaughter, 64 F. Supp. 2d at 331. Thus, the court concludes that Webster's FMLA claim was not actually litigated in a previous action, nor was it necessary to the PRB's judgment. Therefore, the county's argument fails the first element of the issue preclusion test.

For the sake of completeness, the court shall briefly discuss the fundamental fairness element and explain why the county's failure to satisfy this element provides an additional reason as to why the PRB's decision should not be given preclusive effect. In the PRB hearing, the county bore the burden to demonstrate by a preponderance of the evidence that the allegations were true,

10

(Docket No. 25-3 at 11), and thus this factor weighs on the county's side in favor of giving the PRB's decision preclusive effect. Additional facts that weigh on the side of preclusion are that Webster was represented by counsel at the PRB hearing and that Webster was afforded a live hearing for which he was able to subpoena witnesses to testify, to cross-examine witnesses called by the county, and to submit exhibits, (Docket No. 25-3 at 10).

However, although the PRB proceedings afford an employee greater procedural and substantive rights than are often afforded employees in administrative hearings, these rights were far short than those that a litigant receives in a lawsuit. For example, there is no indication that Webster was afforded the opportunity to conduct pretrial discovery in order to uncover evidence necessary to support his claims. Additionally, the only judicial review available to Webster was by way of certiorari, a review that was extremely limited and highly deferential.

But most significantly, application of issue preclusion would be fundamentally unfair because the scope of the PRB hearing was limited to the narrow question of whether Webster violated the county's Civil Service Rules. Webster had no incentive to fully litigate his present FMLA claim before the PRB because there is no indication that the PRB had the authority to adjudicate such claims, much less award Webster the full scope of relief that is available to him in the present action.

## IV. WEBSTER'S MOTION FOR SUMMARY JUDGMENT

The parties agree that a plaintiff alleging that an employer interfered with his rights under the FMLA, see 29 U.S.C. § 2615(a), must prove five elements, (Docket Nos. 26-40 at 10; 45 at 5):

> (1) he is an "eligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "employer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.

Cavin v. Honda of Am. Mfg., 346 F.3d 713, 719 (6th Cir. 2003).

The defendant contends that there are numerous disputes of material fact regarding whether Webster gave Milwaukee County notice of his intent to take leave, and thus summary judgment in favor of Webster is inappropriate. (Docket No. 45 at 5.) The FMLA requires that an employee give an employer 30 days notice of an intention to take leave if the need for leave is foreseeable. If the need for leave is not foreseeable, employees must provide notice as soon as is practicable. 29 U.S.C. § 2612(e)(2)(B); see also 29 C.F.R. § 825.303(a). Whether notice was provided as soon as was practicable presents a question of fact. Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir. 1997).

The FMLA establishes a floor for an employee's rights; an employer is free to be more generous by, for example, offering greater periods of leave or more lax notification requirements. Webster contends that the county's FMLA policy required only that an employee notify the county of leave within two working days after returning to work. (Docket No. 26-40 at 13-14.) Although there is evidence that Webster did not request leave until after he was expected to begin his shift, because Webster's leave requests were always within 2 days of his return to work, Webster contends he complied with the county's policy. Therefore, Webster argues that the undisputed evidence demonstrates that he is entitled to summary judgment.

The defendant disagrees with Webster's interpretation of its leave policy and contends that notification within two days of returning to work is permissible only if earlier notice is not possible due to an emergency. (Docket No. 48-1 at ¶23.) Milwaukee County's FMLA leave policy states:

> In the event of an emergency, you must notify both your immediate supervisor and the Human Resources/Payroll designee as soon as possible prior to the leave. If it is not possible to make such notification prior to this leave, notification must be made within two working days of your return to work. Leave time will not be approved until all required documentation (both Part B and Part C) has been received by Human Resources/Payroll.

(Docket No. 26-22 at 9.)

Webster seemingly interprets the phrase, "If it is not possible to make such notification prior to this leave, . . . " as applying to notification before the *start* of any leave. Thus, under Webster's interpretation of the county's leave policy, one might construct a scenario in which a county employee was in a car accident on the way to work and required extensive medical leave to recuperate. Would such an employee be excused from reporting to work or even contacting his employer for up to a maximum of 12 weeks provided he requests leave within 2 days of returning to work? As long as the leave was otherwise authorized, because he could not notify the county of the need for leave before leave was needed, the 12 weeks spent recuperating and incommunicado must be excused irrespective of whether the employee could have requested leave far sooner. Taking Webster's interpretation to its logical conclusion is patently absurd and wholly inconsistent with FMLA regulations.

The only reasonable interpretation of this phrase is that notification within two days of returning to work is permissible only if it is not feasible to provide earlier notice prior to the *end* of the leave. Thus, when an employee is not able to request leave before the employee must miss work, the employee must request leave as soon as is possible, but in no event will such requests be accepted if made more than 2 days after the employee has returned to work. This understanding is wholly consistent with current FMLA regulations which repeatedly discuss an employee's obligation to notify an employer of the need for leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

Webster also contends that when an employee is requesting FMLA leave, the county is prohibited from terminating an employee for failing to comply with the county's general attendance policy and specifically its requirement that notice always be given prior to the start of a shift. (Docket No. 26-40 at 12-14.) In support of this contention, Webster relies upon Cavin where the Sixth Circuit held "that employers cannot deny FMLA leave on grounds that an employee failed to

comply with internal procedures." Although Cavin diligently called his employer every day that medical leave was necessary, contrary to the employer's policies, Cavin did not notify the "Leave Coordination Department." Relying predominantly upon FMLA regulations in effect at the time, the court in Cavin rejected the Seventh and Tenth Circuit's interpretations on the FMLA and held that a violation of an employer's leave notification procedures could not form the basis for denying an employee leave. 346 F.3d at 721-22 (citing Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002); Holmes v. Boeing Co., 1999 U.S. App. LEXIS 377 (10th Cir. Jan. 12, 1999) (unpublished)).

Unlike the Sixth Circuit, this court is bound to follow the decisions of the Seventh Circuit and thus Lewis, not Cavin, is the precedent that must guide this court's decision. Moreover, the Sixth Circuit's interpretation of the FMLA and its related regulations was arguably overruled by a subsequent amendment to the FMLA regulations. The current regulations regarding notice for unforeseeable leave state:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. 825.303(c). Thus, in contravention of the holding of the Sixth Circuit, the Labor Department has subsequently ruled that an employee's leave request may be delayed or denied simply because of the employee's failure to comply with the employer's internal procedures, provided "no unusual circumstances justify the failure to comply."

The FMLA current regulations also provide the following example that is relevant to the question of the promptness of notice that is required under the Act.

> [I]f an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment. However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.

29 C.F.R. § 825.303(a).

However, these revised rules became effective only on November 17, 2008. 73 F.R. 67934, 68099. The parties do not address what relevance the amended rules should have upon this case, which involves events that occurred in 2005 and 2006. Nonetheless, the question is inconsequential because during 2005 and 2006, the rule in the Seventh Circuit was consistent with the standard articulated in the amended rules. See, e.g., Lewis, 278 F.3d at 710.

In Lewis, 278 F.3d 706, the Seventh Circuit held that an employer did not violate the FMLA by discharging an employer for her failure to comply with the employer's internal notification policies that permitted delayed notice only if advance notice was impossible and the court concluded that "it was not impossible" for the plaintiff to provide earlier notice. Id. Thus, this court concludes that if emergency circumstances prevented Webster from requesting leave in advance of the start of his shift, Webster was required to provide notice "as soon as practicable under the facts and circumstances of the particular case."

There are no categorical rules as to what constitutes adequate notice. Burnett v. LFW Inc., 472 F.3d 471, 479 n.4 (7th Cir. 2006) (citing Cavin, 346 F.3d at 724; Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995)). Rather, such "fact-rich" questions are best resolved by the trier of fact. Id.; see also Price, 117 F.3d at 1026. In the present case, there are numerous disputes as to the material fact of whether Webster gave adequate notice of his need for FMLA leave. For example, with respect to Webster's February 22, 2005 absence, there is a dispute as to whether

Webster ever called and requested FMLA leave. (Docket No. 54 at 40.) There are also other examples in the record before this court where Webster allegedly provided notice only after his shift began, (see Docket Nos. 26-5 at 12; 26-5 at 13 26-5 at 17, 26-5 at 19), and thus, should the jury find that Webster failed to give notice before his shift began, it shall be for a jury to determine whether Webster gave notice as soon as was practicable. Therefore, based upon these disputes of material fact, Webster's motion for summary judgment must be denied.

## V. PLAINTIFF'S MOTION TO STRIKE

In response to the plaintiff's proposed findings, the defendant has submitted time records from Riteway Bus which indicate that on the last four of the seven relevant dates where Webster requested leave, rather than caring for his seriously ill daughter as he alleged, Webster was actually working another job at Riteway. (Docket Nos. 43-1, 43-2.) The plaintiff has now moved to strike certain of the defendant's responses to the plaintiff's proposed findings of fact. (Docket No. 55.) Webster contends that "[s]everal of those Responsive Proposed Findings are hearsay, lack foundation, are irrelevant and are inadmissible at trial." (Docket No. 56 at 1.)

The evidence that Webster seeks to strike is not necessary to the court's resolution of the pending motions and therefore, the motion to strike is moot and shall be denied as such.

## VI. CONCLUSION

For the reasons stated above, the court shall deny both parties' motions for summary judgment. Although issue preclusion may bar re-litigation of FMLA claims that were previously adjudicated by an administrative body, issue preclusion does not bar Webster's present claim because the PRB did not decide the issues that Webster seeks to litigate. Further, the court finds that principles of fundamental fairness weigh on the side of concluding that the PRB's decision should not be afforded preclusive effect. As for Webster's motion for summary judgment, the court finds that there is a dispute of material fact as to whether Webster provided notice of his need for leave

before the start of his shift and if not, whether Webster provided notice as soon as practicable under the facts and circumstances of the particular case.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment, (Docket No. 23), is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment, (Docket No. 26), is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike, (Docket No. 55), is **denied as moot**.

The court will conduct a telephone conference on **July 30, 2010** at **8:30 A.M.** to discuss further scheduling. The court will place the telephone call.

Dated at Milwaukee, Wisconsin this 21st day of July 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
