# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DEWITT WEBSTER,**

        **Plaintiff,**

        v.                                              Case No. 08-C-481

**MILWAUKEE COUNTY,**

        **Defendant.**

## ORDER DENYING PLAINTIFF'S MOTION IN LIMINE

### I. PROCEDURAL HISTORY

Dewitt Webster ("Webster") alleges that he was unlawfully disciplined and eventually terminated for exercising his right to leave under the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*. Each party previously moved for summary judgment, and on July 21, 2010 this court denied both motions. (Docket No. 57.) A final pretrial conference is scheduled for November 23, 2010 and a jury trial is scheduled to commence on December 6, 2010. (Docket No. 60.)

On October 28, 2010, Webster filed a motion in limine seeking to prevent any mention that while he reported he was on FMLA leave to care for his disabled daughter, Webster was allegedly working a second job for Riteway Bus Company. (Docket No. 61.) Specifically, Webster's motion relates to certain Riteway time records that the County acquired which demonstrate that during times Webster was on leave from the County, Webster was working for Riteway. The defendant responded, (Docket No. 64), and the plaintiff has not replied. The pleadings on the motion in limine are closed and the matter is ready for resolution.

The plaintiff contends that any such evidence should be barred because it is not relevant, it would be unfairly prejudicial, and / or the defendant failed to properly disclose it. (Docket No. 62.) The defendant responds that although the County terminated Webster for a different reason, under McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 360 (1995), after-acquired evidence of the employee's wrongdoing is relevant to determining the remedy to which the plaintiff may be entitled, and the evidence should not be excluded because of any failure to disclose it earlier. (Docket No. 64.)

**II. FEDERAL RULES OF EVIDENCE 401, 402, AND 403**

It is the conclusion of this court that evidence that Webster was working a second job when he claimed he was on leave to care for his disabled daughter is relevant and the probative value of this evidence is not substantially outweighed by any risk of unfair prejudice, confusion of the issues, or any other reason set forth in Fed. R. Evid. 403.

When an employer facing a claim that it terminated the plaintiff for an improper reason later learns that there existed legitimate alternative grounds to terminate the employee, this after-acquired evidence is relevant to the nature of the remedy to which the plaintiff may be entitled. McKennon, 513 U.S. 361. An employer is not fully absolved of responsibility for improperly terminating an employee simply because the employer later realizes it had a legitimate reason to terminate that employee. Id. at 362-63. If the employee is able to prove that he was terminated for an improper reason, the employee may still be entitled to recover back pay but only from the date of his improper termination until the date he would have been terminated anyway due to the after-discovered evidence. Id. In addition, a determination that the employee would have been terminated anyway necessarily bars the plaintiff from obtaining the remedies of reinstatement or front pay following the date he would have been legitimately terminated. Id. at 361-62. It is the defendant's

burden to demonstrate that this after-acquired evidence of wrongdoing was of a sufficient severity that the employee would have been terminated. Id. at 362-63.

Evidence that Webster was working at Riteway may be prejudicial in the sense that it hurts his case, but that is not the same as unfair prejudice under Rule 403. The evidence is highly probative because, as explained above, it has a direct effect upon the nature and amount of relief Webster may be entitled to if he is able to prove his underlying claim. The evidence is also probative of Webster's credibility, which will be at issue with respect to certain factual disputes underlying Webster's claim. Moreover, the court finds little risk that admission of this evidence would result in the jury confusing the issue or being misled, and therefore, the court finds no basis to exclude the evidence on any of these bases.

It will be the jury's fact-finding responsibility to determine if Webster was working at a second job while he reported he was on leave caring for his disabled daughter, and if so, whether Webster would have been terminated once the County became aware of this. Obviously, the jury must hear the evidence in order to resolve these material factual disputes.

**III. FAILURE TO DISCLOSE**

Webster's timesheets from Riteway are documents that the County may use to support its defenses, and therefore the County was required under Rule 26(a)(1)(A)(ii) and (e)(1)(A) to disclose these documents in a timely manner. If a party fails to disclose information under Rule 26(a) or (e), the party is generally barred from using that information at trial "unless the failure was substantially justified or is harmless." Rule 37(c). However, if warranted, a court has discretion to impose alternative sanctions. Rule 37(c)(1). Although documents that are used solely for impeachment are exempt from disclosure, the County does not contend that its intended use of these documents is limited to impeachment. Thus, it is not necessary to determine whether the impeachment exception under Rule 37(c)(1) is limited to evidence that has no purpose other than

impeachment, see Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998); Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513 (5th Cir. 1993), or whether the exception applies merely if the evidence is offered as impeachment rather than in the proponent's case in chief, see Hayes v. Cha, 338 F. Supp. 2d 470, 503 (D.N.J. 2004) (citing Halbasch v. Med-Data, Inc., 192 F.R.D. 641 (D. Or. 2000) (in turn citing DeBiasio v. Illinois Cent. R.R, 52 F.3d 678 (7th Cir. 1995))).

The County does not argue that its failure to disclose the timesheets was substantially justified and therefore the court turns to question of whether the failure was harmless. When a court is faced with the question of whether a failure to disclose was harmless, the court should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003).

Much of Webster's prejudice argument focuses upon how the evidence hurts his case. Although obviously detrimental to his case, whether or not the *evidence* is prejudicial is not the issue under Rule 37(c); that is a question under Fed. R. Evid. 403. Rather, the question under Rule 37(c) is whether the *failure to disclose* was prejudicial. In this regard, Webster alleges only that he "has no ability to properly investigate the allegations." (Docket No. 62 at 5.)

During his deposition, Webster was questioned extensively about whether he was working at Riteway when he was on FMLA leave. Although he initially denied ever working at Riteway on any day he was on leave from the County, (Docket No. 65-1 at 5), his answers to similar questions later were more equivocal, answering "not that I can recall," "I don't remember," and "I don't believe so," (Docket No. 65-1 at 5), particularly when he was asked if he worked at Riteway on specific days he took leave, (Docket No. 65-1 at 6-7).

4

As discussed above, whether Webster was using leave time to work a second job instead of caring for his disabled daughter is obviously a fact that is relevant to Webster's case, particularly in regard to available remedies. Knowing the importance of such information and testifying at his deposition that he did not remember if he had used his leave time in this way, Webster had ample time thereafter to investigate this matter. Webster had sufficient time to obtain his time records from Riteway and compare those dates with his FMLA leave dates. For whatever reason, Webster apparently chose not to engage in further investigation since he now contends that lack of the alleged evidence hinders his ability to prepare for trial. It may be that he already knew the answer. In any event, the County did obtain the records from Riteway and has made its own comparison. Since the plaintiff had an equal opportunity to investigate, he cannot now complain of being denied this opportunity.

Even if the court were to accept that it was not unreasonable for Webster to forego a prior investigation into his records at Riteway, any demonstrated prejudice resulting from the County's late disclosure of this information could have been negated by promptly requesting permission from the court to conduct additional limited discovery. Webster knew that the County had the records no later than June 14, 2010 when they were filed as part of the County's response to Webster's motion for summary judgment. (Docket No. 43.) Instead of requesting that the court reopen discovery to investigate this new information, Webster responded to this disclosure with a motion to strike on the basis that the records were hearsay, lacked foundation, and were irrelevant. (Docket No. 55-56.) Because these timesheets played no role in the court's summary judgment decision, the court denied Webster's motion to strike as moot. (Docket No. 57.) At no point did Webster attempt to investigate these claims through formal discovery. Nor did Webster even raise this issue with the court during the July 29, 2010 scheduling conference when the trial date was set.

Only now, a little more than a month before trial, does Webster seek relief by filing his present motion in limine. At this late date, relief by way of reopening of discovery, even for a limited purpose, is basically out of the picture. Even if reopening limited discovery was possible, it is not an option sought by Webster. In fact, Webster offers no indication as to what sort of investigation he would have undertaken if the County had timely disclosed this information. This further supports the court's conclusion that Webster was not prejudiced by not being afforded the opportunity to investigate the documents.

Finally, the court finds no reason to conclude that the County was required to disclose this evidence in an amended answer to the complaint. Although fraud or illegality are affirmative defenses that must be raised in an answer to the complaint, see Fed. R. Civ. P. 8(c)(1), there is no indication that the County seeks to utilize the evidence in this manner. Moreover, Webster has failed to offer any support, for example by citations to relevant case law, that the County was required to raise this matter by way of amending its answer.

## IV. CONCLUSION

For the reasons stated below, evidence that Webster was working a second job when he claimed he was on leave to care for his disabled daughter is relevant, and the probative value of this evidence is not substantially outweighed by any risk of unfair prejudice, confusion of the issues, or any other reason set forth in Fed. R. Evid. 403. Although the County should have disclosed this information during discovery, Webster has failed to demonstrate that he was prejudiced by this failure. **IT IS THEREFORE ORDERED** that Webster's motion in limine, (Docket No. 61), is **denied**.

Dated at Milwaukee, Wisconsin this 16th day of November, 2010.

s/AARON E. GOODSTEIN  
U.S. Magistrate Judge